REEVES VS REEVES.

Opinion Delivered June 8, 1899.

*1.  Exemption.*

To entitle a defendant to exemptions, he must be a bona fide resident of the Indian Territory, and the action in which the exemptions are claimed, one to recover debt upon a contract.

*2.  Receiver—Rents of Property—Who liable for.*

By agreement of the parties, land was taken out of the hands of a receiver and the plaintiff was placed in possession, agreeing to pay the wife of defendant a fixed rental therefor. *Held*, That plaintiff, personally, became liable for the rent of the property and it was error to give judgment against the receiver therefor.

Appeal from the United States Court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Action by Charles C. Reeves against Charles Reeves. C. W. Moore intervened. W. S. Nelson was appointed receiver. There was a decree against plaintiff and the Receiver. Plaintiff appeals. Modified.

On June 10, 1890, the plaintiff filed his complaint in this action against the defendant, praying judgment for the sum of $2,500, for moneys advanced to the defendant to purchase live stock, farm implements, farm improvements, etc., and caused a writ of attachment to be issued, and to be levied upon the following property: "Ninety-one head of cattle, including twenty-seven calves, H. & R. under; eight head of horses; three mules; two wagons, of Moline and

Harrison makes; two sets of double harness; three pitch-forks; one scoop shovel; one lot of miscellaneous small farming tools and implements; one cornplanter; one culti-vator; one hayrake; 57 head of mixed hogs and pigs (total weight, 6,024 pounds); and about 500 bushels of corn, more or less, and about 50 acres of growing corn and 360 acres of growing wheat,—as their interest may appear, on the Reeves ranch, Indian Territory." And on June 26, 1890, the plaintiff filed another complaint by separate suit against the defendant to recover $2,479.50 upon four promissory notes; alleging that the consideration of said notes was certain personal property delivered by the plaintiff to the defendant, with the understanding that the same should be the defendant's upon the payment of the notes sued upon, and also alleging that the defendant had sold, and converted to his own use, about $500 worth of the said personal proper-ty, and refused to account to the plaintiff for same. A writ of attachment was also sued out in this action, and levied upon the following property: "All the wheat raised on thirty-four acres of land, and now in shock and stack; also, the undivided one-half interest of 300 acres of wheat, in shock, stack, and granary; also, ⅓ interest of 50 acres of grow-ing corn (undivided) on said field of Reeves' ranch, Indian Territory, also all the improvements on said ranch, consisting of about four hundred fifty acres of plowed land, with buildings, fences, etc., adjoin-ing said plowed land, and about one hundred acres of meadow lands adjoining said plowed lands and belonging to said Reeves ranch. All the wheat on thirty-four acres of land, and now on the land of the Reeves ranch, in shock and stack; also, the undivided ½ in-terest of three hundred acres in shock, stack and granaries, on said land; also, ⅓ interest of fifty acres of growing corn on said Reeves ranch, in Indian Territory, C. H. Nation; also, all the improvements on said ranch, consisting of about

450 acres of plowed land, with buildings, fences, etc., there-on, two pastures, of about fifty acres each, adjoining said lands, and about one hundred acres of meadow land adjoining said plowed land, and belonging to said Reeves ranch, Indian Territory.  *  *  *'' These two actions were afterwards consolidated.  On July 30, 1890, the defendant appeared by his attorney, and moved the court to quash the writs of attachment, and on the same day the plaintiff moved the court to appoint a receiver for the property attached in the two actions.  On August 8, 1890, the defendant served notice on the plaintiff that he would on August 14, 1890, file a schedule of personal property claimed by him as exempt from levy and sale under the writs of attachment in these actions.  On August 14, 1890, the defendant filed his schedule, and the clerk issued a supersedeas releasing 666 6-10 bushels of wheat, at 75 cents per bushel, of the value of $500, claimed as exempt by the defendant, and which had been previously levied upon.  On August 25, 1890, upon the hearing of the motions to quash the writs of attachment, the court dissolved and discharged the writs of attachment so far as the levy and seizure affected the improvements upon the lands, and also ordered the attachments in all things to be discharged and dissolved unless the plaintiff should file a good and sufficient bond by September 25, 1890.  On August 29, 1890, the plaintiff filed this bond, which was duly approved. On August 30, 1890, the plaintiff filed a motion to quash the supersedeas which had been issued by the clerk; alleging that the defendant was not a resident of the Indian Territory, and had not been for two years last past, that the defendant was not the owner of the property scheduled by him, and that the defendant had converted over $600 worth of property belonging to plaintiff, for which he had not accounted.  This motion was supported by affidavits on file.

On the same day, on the plaintiff's petition, the court ordered that the supersedeas which had been issued by the clerk should be suspended until the final determination of this action, upon the plaintiff's executing a bond to the defendant in the sum of $1,000 to indemnify him, which bond was executed and filed by the plaintiff, and duly approved on September 12, 1890. On October 14, 1890, the plaintiff filed an amended complaint in the two causes as consolidated, for the possession of 120 head of cattle, 10 head of horses, 3 mules, 60 head of hogs, farming implements, and 400 acres of farming lands, and improvements thereon, and also for the conversion of some of the property claimed by the plaintiff, and prayed recovery in the sum of $5,000, and the appointment of a receiver to take charge and control of the property levied upon in both actions. On December 22, 1890, the writs of attachment were dissolved, the two causes, as consolidated, transferred to the equity side of the docket, and W. S. Edwards appointed receiver of the property and improvements levied upon, and ordered to give a bond in the sum of $8,000, which he did on January 31, 1891. On September 3, 1894, the receiver, W. S. Edwards, was ordered to make a report of his doings as such receiver by the first day of the next term of court; and on the same day, this cause coming on to be heard upon the question of the defendant's right to an exemption of $500, and the plaintiff's motion to quash the supersedeas, the court held that the defendant was entitled to the exemptions claimed, and ordered the receiver to pay that sum to George E. Nelson, Esq., attorney for defendant, which payment was finally compelled by contempt proceedings against the receiver, and all over the objection and exception of the plaintiff. It does not appear that the order of the court, which had been formerly made, suspending the operation of supersedeas upon plaintiff giving a bond in the sum of $1,000 to the defendant until the final determination of this cause, had ever been vacated.

*S. M. Porter*, for appellant.

*George E. Nelson*, for appellee.

*N. B. Maxey*, for intervener.

THOMAS, J.    After a long and careful examination of the voluminous record, the preceding statement of the case has been winnowed out of the great mass of irrelevant matter, and is believed to cover all the points essential to a proper determination of the questions of law and fact involved.

Appellant assigns 15 errors, as follows: "First. It was error to require plaintiff to pay to defendant's attorney $500 as an alleged exemption right, for the reason that the plaintiff, by order of the court, had given a bond of indemnity to defendant, in the sum of $1,000, to abide the final result of this litigation. Second. It was error to permit he interpleader to interplead in this cause at all, and plaintiff's demurrer to the first interplea and to the amended interplea should have been sustained. The interpleader's claim is based upon the theory that the receivership was at all times, and still is, existing and unsettled, while the plaintiff contends that the receivership was settled and discharged by mutual agreement of all parties in interest more than two years before the interpleader claims to have obtained any rights in the premises. Third. It was error to decree that the premises in controversy were of the cash rental value of $500 per year, when the interpleader's own testimony was positive that the premises had no actual or market rental value in cash. Fourth. It was error to charge the receiver with the rental value of the premises, in the sum of $500 per year, when the testimony, positively and beyond contradiction, shows that he had never received any such sum, and that the rents and profits from the prem-

ises had not amounted to that sum for any year after he was appointed receiver. Fifth. It was error to render any judgment against the receiver, under the testimony and admitted facts in this cause. Sixth. It was error to render any judgment in favor of the interpleader, because he assumes to have purchased some rights to property in litigation, and pending a receivership of the same property he claims to have purchased without any order from the court for the sale to him or to any other person, and, furthermore, because all the testimony shows that he purchased a right to the improvements, to become operative only after plaintiff's time under his contract for making the improvements had expired. Seventh. It was error to decree to the interpleader possession of the premises, at least until after the plaintiff's time thereon had expired, or until plaintiff had received back, in rents and profits, the amount of money he had expended in making improvements; and the testimony conclusively proved that the plaintiff, up to the time of the final decree in the court below, had only received, in rents and profits, the sum of $3,714, whereas he had expended in making said improvements the sum of $7,200. Eighth. It was error to institute any contempt proceedings against the receiver, when he had fully and at all times reported his doings to the court, and had reported that the subject-matter of the receivership had been settled agreeably to every person in interest on July 14, 1892. Ninth. It was error to decree that the plaintiff's time under his contract with defendant's wife, had expired on the premises in the year 1893, when the plain provisions of that contract were that the plaintiff was to have possession of the premises for eight years after the contract was made, as compensation for his money invested. Tenth. It was error to decree that the making of the contract of July 14, 1892, between plaintiff and defendant's wife was a merger of all previous contracts, and particularly the contract between plaintiff's assignor

(29)

and defendant, and that said contract of July 14, 1892, was a full settlement of all claims against defendant and his wife up to that date. Eleventh. It was error to find and decree that the contract between Bessie Terrell and the interpleader made in November, 1894, was a valid contract, and that said Bessie Terrell is entitled to the sum of $200, or any other sum, because, according to the testimony of H. D. Lannom, who wrote the contract for the interpleader and Mrs. Terrell, it was not intended to convey or grant to such interpleader any rights against the plaintiff or the receiver, but only to get some demand, if any existed, against one A. J. Reeves. Twelfth. It was error to find that interpleader was entitled to any rents on the premises, or that he would become entitled to any rents until the expiration of the plaintiff's time thereon had expired, because, from the uncontradicted testimony, it appears that the interpleader purchased only a future right to the whole premises, for a consideration of $175, with the express understanding that he was not to have any rents or profits or possession until the plaintiff's time under his contract with defendant and defendant's wife had expired, which would be in the year 1900. Thirteenth. It was error to find that the receiver, having not been formally discharged by the court, was liable on his bond for rents and moneys which he had never received, and never could have received, under the circumstances, because no such money could have come into his hands, even if he had received the one-third part of the crops as rents and profits for the various years specified. Fourteenth. It was error to require the receiver to pay into court money which he had never received, and which never in any way had come into his possession or control. Fifteenth. It was error to require the receiver to file an answer or supersedeas bond in this case."

As to the first error complained of by the appellant, there was no proof on the part of the defendant as to his

right to the exemptions claimed, except his own affidavit attached to the schedule filed. There were several affidavits on file at the time this order was made, showing that the defendant had absconded and left the Indian Territory. From the proof afterward taken in this cause before its final determination, it appears conclusively, and seems to have been conceded by all the parties concerned, that the defendant had in fact left the Indian Territory during the summer of 1890, and there was some proof tending to establish the fact that he had committed suicide at Hot Springs, Ark., shortly after he left the Indian Territory. By the last-amended complaint, filed previous to this order, the cause became one to recover specific personal property, or its value, and also for the value of certain other property, alleged to have been sold and converted by the defendant, of the value of about $600. In ordert o have entitled the defendant to the exemptions claimed by him, the law required that he be a bona fide resident of the Indian Territory, and also that the action in which the exemptions were claimed be to recover a debt due by contract. We are of opinion that the trial court erred in allowing the defendant the exemptions claimed by him, in the sum of $500, and in requiring the receiver to pay this sum to George E. Nelson, Esq., defendant's attorney. See first and third findings of fact of master (pages 96 and 97 of record); section 2992, Mansf. Dig.; Massie vs Enyart, 33 Ark. 688; Smith vs Ragsdale, 36 Ark. 297.

The other errors complained of in this cause arise upon the issue made between the interpleader, C. W. Moore, and the plaintiff, Charles C. Reeves, and W. S. Edwards as receiver. We have carefully read all the testimony in this case, and the report and supplemental report of the master, and his findings of fact and conclusions of law, and, with the following exceptions, we are of the opinion that the facts, as found by the master and approved by the court below, are correct: The master finds that on July 16, 1892,

the defendant, Charles Reeves, who was an adopted citizen of the Cherokee Nation, having absconded and left the Cherokee Nation, under and by virtue of the laws of the Cherokee Nation his wife, Bessie Reeves (also called "Bessie Lilliard" and "Bessie Terrell" in the record in this cause), succeeded to all the right, title, and interest of her said husband, the defendant in this cause, in all the property attached in these actions, as well as the ranch and farm lands and improvements which had been placed in the hands of the receiver, W. S. Edwards, which finding we approve. But we further find that on the said 16th day of July, 1892, all the parties in interest in this suit at that time, to-wit, A. J. Reeves, Charles C. Reeves, Mrs. Bessie Reeves, and the receiver, W. S. Edwards, went to the law office of the plaintiff's attorney, S. M. Porter, Esq., at Caney, Kan., and it was there agreed by all the parties in interest that all of the personal property attached in this cause should be turned over and delivered to the plaintiff in satisfaction of his claim against the said defendant, and that the litigation should terminate, and that the said receiver should be discharged. And we find that in pursuance of this agreement, the receiver, W. S. Edwards, turned over and delivered to the plaintiff, Charles C. Reeves, all of the property attached in this action, together with the ranch and farm lands. It was more than two years after this settlement made by all of the parties in interest in this cause that the interpleader, C. W. Moore, purchased from the wife of the defendant, then Mrs. Bessie Terrell, all of her right, title and interest in and to the farm and ranch lands known as the "Reeves Ranch," and it was not until the 20th day of July, 1895, three years after the intervener had purchased the right of Mrs. Bessie Terrell, the divorced wife of the defendant, that he appeared by his attorneys, and by leave of the court filed his plea of intervention in this cause. We find from the testimony in this case that at the time the intervener,

C. W. Moore, purchased the interest of Mrs. Bessie Terrell to the Reeves ranch, his agent and he himself knew it was in the possession of the plaintiff, and he purchased this ranch subject to the contract which had been made on the 16th day of July, 1892, by the plaintiff, Charles C. Reeves, with Bessie Reeves, by the terms of which the plaintiff was to have the Reeves ranch for one year from that date at a rental of $200, and Bessie Reeves agreed to renew that contract every year thereafter upon the same terms. We agree with the master that this contract terminated on the 16th day of July, 1893, and that the plaintiff has not paid any rent to Mrs. Bessie Terrell, or her assigns, for the ranch since that date. We are of the opinion that the trial court erred, under this state of facts, in rendering a personal judgment against the receiver and officer of the court, W. S. Edwards, for the rent of this place from the 16th day of July, 1893, until the 16th day of July, 1897, at $50) per year. While we are of the opinion, from the testimony in this case, that the sum of $500 was a reasonable rental value for these premises for each of these years (the plaintiff himself testifying that he received during the year 1893 the sum of $700, in 1894 $420, and in 1895 the sum of $580), the finding of the trial court as to the rental value of the premises we believe to be correct; but we are of the opinion that inasmuch as, by agreement of the parties in interest, this property had all been taken out of the hands of the receiver and placed in the hands of the plaintiff, Mrs. Bessie Reeves, who afterwards became Mrs. Bessie Terrell, was estopped from claiming that the receiver was liable to her for the rent of these premises during that period; and therefore her assignee, the intervener, C. W. Moore, would not be entitled to anything more than she herself would have been, and certainly the receiver would not have been responsible to her personally, and is not responsible to the intervener, C. W. Moore. Supposing that Mrs. Bessie Terrell, the divorced wife of the

defendant, Charles Reeves, had intervened in this cause, claiming to have succeeded to all the rights of the defendant in the property attached in these causes, and to the Reeves ranch, with rents, profits, and issues derived from it, and had asked for a personal judgment against the receiver, W. S. Edwards, for these rents after the 16th day of June, 1893, and it appeared, as it does in this case, that on the 16th day of July, 1892, she had agreed that the receiver should turn over all of this property to the plaintiff in satisfaction of his claim against the defendant, and that the receiver should be discharged, could it be lawfully urged that she was entitled to recover a personal judgment against the receiver for the rent after that date, which he had not received, under her agreement with him? It would certainly be most unjust to allow her to recover these rents from the receiver personally, and the intervener in this cause succeeds to only such rights as she had at that time. It would be inequitable to allow her to recover those rents if she were the intervener, and it certainly would not be less to allow this intervener to recover a personal judgment against the receiver, an officer of the court.

We are of the opinion that the plaintiff, Charles C. Reeves, is indebted to the intervener for the reasonable rental valve of these premises from the 16th day of July, 1893, the date when his contract with Mrs. Reeves expired, to the 16th day of July, 1897, less the $500 paid defendant for exemptions claimed, which the court found to be $1,500, but the decree of the trial court, in rendering a personal judgment against the receiver, W. S. Edwards, for this sum, was error. It further appears from the testimony and the findings of the master in chancery that about the 16th day of July, 1896, the receiver, W. S. Edwards, again took possession of these premises, undoubtedly forced to do so by the attitude of the trial court in holding him responsible for the rents of this place, under the theory that he should

have received and collected them, and that, although he had not, from that date until the present time, he should account for the rents, profits, and issues of the premises in dispute in this case. And the said receiver, W. S. Edwards, is directed to file a report showing his acts as such receiver from the 16th day of July, 1896, to the present time, and the amount of rents collected by him for the said premises; and this accounting may be compelled, or the matter referred to the master to ascertain the amount of rents actually collected by the receiver since that date. We are of the opinion that the plaintiff, Charles C. Reeves, should have a credit in the sum of $500 on back rent for the amount paid by him to the defendant as exemptions, and approve the finding and decree of the trial court in that respect.

Let the decree of the court be modified as follows: Let the intervener, C. W. Moore, have judgment against the plaintiff, Charles C. Reeves, for the sum of $1,500, the rental value of the premises, as found by the court, from July 16, 1893, to July 16, 1897, at $500 per year (that being the amount due after deducting the sum of $500 paid by the plaintiff to the defendant as his exemptions), and also judgment against the plaintiff, Charles C. Reeves, for the reasonable rental value of the premises from July 16, 1897, to be determined by further proceedings herein. Let a personal judgment go against the receiver, W. S. Edwards, for all rents, profits, and issues actually collected or received by him for said premises, to be determined by the court by further proceedings, and, when it is determined, to be ordered paid into court, and applied as a credit upon the judgment in favor of the intervener,—an accounting and payment to be compelled by proper proceedings; but a personal judgment is not to be rendered against the receiver in this action, except for moneys actually received by him as such receiver. And let the costs of this appeal be adjudged against the intervener, C. W. Moore, to be credited upon his

judgment. In all other respects the judgment and decree of the lower court is affirmed and modified and remanded.

CLAYTON and TOWNSEND, JJ., concur.